U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR - 5 2009

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JONATHAN Q. RYAN,                §
                                 §
            Plaintiff,           §
                                 §
VS.                              §    NO. 4:07-CV-310-A
                                 §
CITY OF FORT WORTH, TEXAS,       §
ET AL.,                          §
                                 §
            Defendants.          §


MEMORANDUM OPINION
and
ORDER

Came on for consideration the above-captioned action wherein
Jonathan Q. Ryan ("Ryan") is plaintiff, and Ricardo De Los Santos
("De Los Santos"), John F. Phillips ("Phillips"), Paul Genualdo
("Genualdo"), Bruce Southey ("Southey"), Steve Myers ("Myers"),
(collectively, "police officers") and City of Fort Worth, Texas
("City"), are defendants. On January 22, 2009, defendants filed
motions for summary judgment. Ryan filed no response. Having
considered the motions, the summary judgment evidence ("the
evidence"), and the applicable authorities, the court concludes
that defendants' motions for summary judgment should be granted
for the reasons discussed herein.

I.

Allegations of the Complaint

Ryan asserts the majority of his claims under 42 U.S.C. §
1983 and one claim under Texas law. Ryan alleges that his Fourth
and Fourteenth Amendment rights were violated by defendants
during the course of his standoff and arrest in October 2006.

Specifically, Ryan claims that, during the course of the arrest, (1) Phillips, Genualdo, and De Los Santos kicked, stomped, and assaulted him, (2) Southey assaulted and tortured him by shocking him multiple times with a TASER Electronic Control Device ("TASER"), (3) Phillips and Myers failed to protect him (Phillips by allowing Southey to use the TASER and Myers by not stopping the assault), (4) Genualdo, De Los Santos, and Southey were derelict in the performance of their duties, (5) all of the police officers failed to find a fire extinguisher to put out the fire on Ryan, (6) City is vicariously responsible for the actions of its employees, and (7) City adopted a custom of allowing police officers to violate Ryan's constitutional rights. Ryan's complaint, liberally construed, also asserts that Myers is "criminally responsible for the conduct of another," presumably in violation of Texas Penal Code § 7.02.

II.

## Motions for Summary Judgment

A.    Myers's and Southey's Motion

In their motion, Myers and Southey contend that they are entitled to summary judgment because the evidence reflects that (1) Myers and Southey are entitled to qualified immunity on Ryan's federal law claims, and to the extent that Ryan asserts state law claims, they are entitled to official immunity; (2) Southey did not engage in excessive force in a manner that would violate a clearly established right; (3) Myers engaged in constitutionally reasonable force and would have been entitled to

engage in deadly force; (4) Ryan's negligence claim involving the fire extinguisher is not actionable under § 1983, and Myers and Southey would be entitled to immunity from such claim; (5) Myers is not liable under a theory of bystander liability because (a) there was no duty to intervene because no officer used excessive force, (b) even assuming there was a duty to intervene, there was no time for Myers to intervene, and (c) Myers would enjoy immunity from such claim; (6) Ryan's claim of assault is simply a repetition of his excessive force claim, to which both officers would be entitled to official immunity; and (7) Ryan's claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), because entertaining Ryan's claims would necessarily imply the invalidity of his state court sentence.

B.    De Los Santos's, Phillips's, and Genualdo's Motion

In their motion, De Los Santos, Phillips, and Genualdo contend that they are entitled to summary judgment because there are no material facts to defeat their claims that (1) they did not violate Ryan's clearly established rights, and even assuming they did, their actions at all times were objectively reasonable, (2) the officers are entitled to official immunity from any state law claims, (3) the officers are entitled to immunity on all claims because deadly force would have been justified, so the officers' less extreme acts were objectively reasonable, and (4) the officers' failure to search for a fire extinguisher was not unreasonable.

C.   City's Motion

In its motion, City argues that summary judgment is appropriate because Ryan cannot demonstrate that (1) he was not provided with proper medical care by City personnel; (2) the City had a policy or custom that deprived him of a federal right because (a) Ryan cannot point to a written policy that resulted in a violation of his constitutional rights and (b) Ryan can produce no evidence of a custom or practice that deprived him of his constitutional rights; and (3) the City's training policy is constitutionally inadequate.

III.

Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court may "grant a [motion for] summary judgment on facts not briefed by the movant, as long as the non-movant has notice of the issue."  Turco v. Hoeschst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996).  Sworn pleadings may be treated as affidavits in support of a motion for summary judgment where the pleading is made on personal knowledge, sets forth facts that would be admissible in evidence, and affirmatively shows that the affiant is competent to testify to the matters stated therein.  See Fed. R. Civ. P. 56(e); Lodge

4

Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 80 (5th Cir. 1987).

The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celeotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

Once the moving party has carried its burden under Rule 56(c), the nonmoving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "In deciding whether a fact issue has been created, the inferences to be drawn from the evidence must be viewed in the light most favorable to the nonmoving party." Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co., 290 F.3d 303, 310 (5th Cir. 2002). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 428. "Conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment. Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).

IV.

Facts

A.    Undisputed Facts

On October 14, 2006, De Los Santos was operating a License
Plate Recognition ("LPR") truck.  While driving through the
parking lot of a motel at 5317 Blue Mountain Road in Fort Worth,
Texas, the LPR system identified a Toyota Camry registered to
someone with a warrant for the individual's arrest.  The Camry
was registered to Ryan, who had an outstanding warrant for
evading arrest with a vehicle.

De Los Santos notified the other police officers of what the
LPR system identified.  After the warrant was confirmed, Myers,
Southey, Genualdo, and Phillips went to the motel and began
surveillance.  After viewing a man get something from the Camry
and return to Room 217, Phillips, Southey, and Genualdo knocked
on the door of Room 217.  The officers spoke with occupants Ryan
Tamayo ("Tamayo") and Brendi Taylor ("Brendi").  Taylor and
Brendi informed the officers that Ryan and Brendi's mother,
Cheryl Taylor ("Cheryl"), were in the adjacent room.  Brendi told
the officers that she believed Ryan to be affiliated with the
Aryan Brotherhood and to be dangerous.  During this time, Southey
learned that Ryan had an extensive criminal history involving
resisting arrest, weapons charges, and multiple narcotics
violations.

Fort Worth police officers then knocked on Room 218, the

6

room identified by Tamayo and Brendi as where Ryan was located.
The officers identified themselves as police officers, announced
that they knew Ryan was in the room, and ordered him to
surrender. No one opened the door for two or three minutes, but
Cheryl made two calls from inside the room to her daughter.
Brendi stated that Cheryl sounded upset.

Myers retrieved the key from the motel manager so the
officers could serve the arrest warrant on Ryan. Prior to
opening the door, the officers heard Cheryl scream loudly. Myers
opened the door and immediately told Ryan to show his hands.
Ryan was standing near the bathroom area, holding a knife against
himself, repeatedly stating that he would kill himself. The
knife was at least five or six inches long with a blade of three
or four inches long. The officers yelled at Ryan to drop the
knife and surrender. Ryan then grabbed Cheryl and placed the
knife against her, threatening to kill her. After a few minutes
of standoff, Cheryl was able to get away from Ryan and Southey
fired a TASER at Ryan, striking him with both probes of the
TASER.[1]

After the first cycle of the TASER, Ryan took his knife and
slashed it at police officers. Phillips ordered Southey to "hit
him again," which signaled Southey to initiate a second TASER

---

[1]A TASER is a device that fires two probes that are attached to wires connected to the device. When fired, the probes are designed to embed themselves into a target and deliver an electrical current to the target. The TASER used by police officers was pre-programmed to discharge an electrical current for a five-second cycle each time the TASER's trigger was pulled. The electrical current is designed to cause involuntary muscle contractions that temporarily incapacitate the target.

cycle. Either during the first or second TASER cycle, a large blue flame emerged from Ryan's shirt. The officers, surprised by the flame, tried to put out the fire with their feet.

After the second TASER cycle, Ryan continued to swing his knife at the officers. Myers kicked Ryan in the chest and head to distract Ryan while the other officers continued to try and disarm and arrest him. At some point in the struggle, someone hit Ryan in the face.

Southey initiated a third TASER cycle. Ryan dropped the knife during the third cycle, but kept moving in the knife's direction despite the officers' orders to not move. The officers were finally able to remove the knife from Ryan's reach after the third cycle had ended. Even without the knife, Ryan continued to struggle, kicking his legs and resisting the officers. Finally, after a struggle lasting approximately a minute and a half, Genualdo was able to cuff Ryan's left wrist while De Los Santos rapped Ryan's legs and Myers placed his foot on the back of Ryan's neck to keep his head down.

After Ryan was detained, the officers called MedStar to examine Ryan and Cheryl. Genualdo accompanied Ryan to John Peter Smith Hospital, where Ryan was treated and released shortly thereafter.

B.    Disputed Facts

The parties dispute the extent of Ryan's injuries. Phillips contends that he observed a cut above Ryan's eyebrow, but observed no other significant injuries. Ryan contends that the

entire struggle rendered him unconscious, and he suffered brain trauma, a broken nose, a concussion, stitches above his right eye, and neck injuries.

The parties also dispute the severity of force the officers used to put out the fire on Ryan. Ryan contends that the officers "stomped" and kicked him, while the officers' accounts do not suggest that any of the officers used this amount of force to put out the fire.

V.

## Analysis

A.    Defendants Southey and Myers[2]

The court need not analyze whether Southey and Myers violated Ryan's federal rights because Ryan has already admitted that they did not. Rule 36(a) of the Federal Rules of Civil Procedure states that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Any matter admitted under Rule 36(a) is conclusively established. Fed. R. Civ. P. 36(b). Deemed admissions are proper to form the basis for summary judgment. See Dukes v. S.C. Ins. Co., 770 F.2d 545, 548-49 (5th Cir. 1985).

---

[2] Having considered Southey's and Myers's argument, the court is satisfied that Ryan's excessive force claim is not barred by the rule set forth in Heck v. Humphrey, 512 U.S. 477 (1994). See Ballard v. Burton, 444 F.3d 391, 398 (5th Cir. 2006).

Myers and Southey served a request for admissions on Ryan on August 22, 2008, via certified mail. Ryan received the request, but never responded. Ryan has not sought leave of the court to respond late or to set aside the deemed admissions. Ryan, therefore, has admitted that Southey's and Myers's actions, at all times relevant to this action, did not violate any of his statutory or constitutional rights, that they acted reasonably at all pertinent times, and that they would have been justified in using deadly force against Ryan during the incident.[3] Myers and Southey have conclusively established that there is no genuine issue of material fact and they are entitled to judgment as a matter of law.

B. Defendants De Los Santos, Genualdo, and Phillips

For the reasons stated herein, the court is satisfied that, as to each claim, De Los Santos, Genualdo, and Phillips have shown that there are no material issues of fact and they are entitled to a judgment as a matter of law.

1. Excessive Force

Ryan's claim of assault implicates, if anything, the Fourth Amendment to the Constitution. See Graham v. Connor, 490 U.S. 386, 395 (1989) (stating that "claims that law enforcement officers have used excessive force . . . in the course of an

---

[3]These admissions also foreclose Ryan's claim against Myers that he violated Texas Penal Code 7.02. Ryan admitted that Myers was performing his discretionary duties in good faith and acting within the scope of his authority. See Cantu v. Rocha, 77 F.3d 795, 808 (5th Cir. 1996). Ryan also admitted that Myers acted objectively reasonable at all times pertinent to this action, which entitles Myers to official immunity from this claim. See id. at 809 ("Texas' [immunity] test focuses solely on the objective legal reasonableness of the officer's conduct.").

arrest" should be analyzed under the Fourth Amendment).[4] "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. at 396 (citations and quotation marks omitted). To establish a claim of excessive force in violation of the Fourth Amendment, a plaintiff must show (1) an injury, (2) resulting directly and only from the use of force that was clearly excessive to the need and (3) a use of force that was objectively unreasonable. Bush v. Strain, 513 F.3d 492, 501 (5th Cir. 2008).

The reasonableness inquiry is objective: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. The court evaluates "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempt to evade arrest by flight." Id. at 396. This inquiry must appreciate that officers must often "make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving . . . ." Id. at 397 (em dash omitted).

Construing the facts most favorably to Ryan, the evidence clearly reflects that none of the police officers engaged in

_____

[4]Insofar as Ryan means to assert an assault claim under Texas law, the court is satisfied, for the reasons explained herein, that the evidence shows that none of the police officers are liable for assault under Texas law. See Tex. Penal Code Ann. § 9.51 (Vernon 2003).

excessive force against Ryan. Ryan repeatedly and continuously struggled with the officers while armed with a knife, repeatedly tried to stab the officers, refused to heed to their repeated orders, threatened to kill both himself and Cheryl, and continued to kick and resist the officers until he was handcuffed. The use of force was in no way excessive to the need presented by the situation, and De Los Santos, Genualdo and Phillips did not engage in a level of force that could be considered objectively unreasonable.

Insofar as plaintiff intends to incorporate his "failure to find a fire extinguisher" claim into his excessive force claim, the court declines to second guess the officers' split-second decision to immediately try and extinguish the fire with their feet rather than to leave Ryan in search of a fire extinguisher. See Id. Even though there was a fire extinguisher somewhere outside the motel room, the evidence reflects that the fire caught everyone by surprise and there was not time for the officers to go looking for an extinguisher instead of immediately putting the fire out. The officers' use of their feet to put out the fire was not objectively unreasonable in light of the circumstances.

2. Bystander Liability Claim

Ryan next claims that Phillips failed to protect him by allowing Southey to use the TASER to subdue him. An officer may be liable under 42 U.S.C. § 1983 if he is "present at the scene and does not take reasonable measures to protect a suspect from

12

another officer's use of excessive force . . . ." <u>Hale v. Townley</u>, 45 F.3d 914, 919 (5th Cir. 1995). Ryan's claim fails because, as discussed in Section V.A.2., Southey did not engage in excessive force so as to warrant intervention by Phillips.[5]

### 3. Failure to Get a Fire Extinguisher

Ryan claims that each police officer failed to get a fire extinguisher to put out the flames on his shirt. Insofar as the police officers' decision not to abandon an armed and burning man for a potentially futile search to find a fire extinguisher could be characterized as negligent, such negligent conduct would not implicate a federal cause of action under 42 U.S.C. § 1983. <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986); <u>Davidson v. Cannon</u>, 474 U.S. 322, 347 (1986).

### 4. Dereliction of Duty

Finally, Ryan's claim of "dereliction of duty" against defendants Genualdo and De Los Santos is a conclusory allegation that, even liberally construed, does not allege a violation of a constitutional or federal right.

### C. Defendant City

Ryan presents his concerns with City in a two-page harangue, providing little guidance as to what actual claims he believes to be cognizable. A municipality cannot be held liable for the constitutional violations of its employees under the doctrine of

---

[5]Similarly, insofar as Ryan attempts to raise a claim against any of the other police officers under some form of liability under Texas Penal Code § 7.02, the court is satisfied that none of the officers engaged in any offense so as to warrant criminal responsibility for the reasons set forth <u>supra</u> Sections V.A.2., V.B.1., and V.B.1. n.3.

13

respondeat superior or vicarious liability.  See Collins v. City of Harker Heights, 503 U.S. 115, 123 (1992); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Rather, a plaintiff must show that he was deprived of a constitutional right because of a municipality's official policy, practice, or custom.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  "The municipal policy or custom must cause the employee to violate another's constitutional rights."  Fraire v. Arlington, 957 F.2d 1268, 1277 (5th Cir. 1992).  A municipality's policymakers effectively make a policy or condone a custom by knowingly ratifying unconstitutional or illegal actions of their employees.  Turner v. Uptown County, 915 F.2d 133, 136 (5th Cir. 1990).  Additionally, a plaintiff may recover if the "injury . . . results from the complete lack of training or grossly inadequate training of a police force provided such is the result of a deliberate and conscious indifference by the city."  Languirand v. Hayden, 717 F.2d 220, 227 (5th Cir. 1983) (internal quotation marks omitted).

To establish a municipal custom or policy, plaintiff must show "a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force."  Fraire, 957 F.2d at 1278.  "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy."  Id. Similarly, conclusory allegations of a pattern of repeated

14

constitutional violations, without evidence, are insufficient to defeat a motion for summary judgment. See Richardson v. Oldham, 12 F.3d 1373, 1382 (5th Cir. 1994).

1. Respondeat Superior

As best as the court can discern, Ryan first claims that, because City hired and trained the police officers, it is responsible when "its public servants abrogates [sic] their sworn oaths and p[er]form their duties in an unlawful manner not conclusive to the public trust." Am. Compl. at 5. City cannot be held liable for the police officers' actions under this theory.[6] See Collins, 503 U.S. at 123.

2. There is No Evidence of a Policy that Violates Ryan's Rights

Ryan's final argument, liberally construed, is that City has passively allowed its police officers to violate Ryan's constitutional rights, creating an unofficial network of constitutional violations. In evidence of such network Ryan cites the police officers' behavior in the incident forming the basis of this action and asserts that his injuries arising from the incident have not been treated.

In its motion, City argues that there is no evidence that City personnel demanded that Ryan be improperly treated, nor is there evidence that City personnel demanded that Ryan be released

_____

[6]While Ryan discusses the training of police officers in his rant against City, these comments do not seem to allege that City failed to train its officers. Insofar as Ryan's amended complaint can be read to raise such a claim, the court finds no evidence to suggest that City failed to train its police officers, much less a failure that would constitute the necessary "deliberate indifference" required for such claim. See City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).

from treatment. City repeatedly contends that Ryan can point to no evidence to support his claim that there is an unofficial policy that ratifies constitutional violations. Additionally, City cites a variety of Fort Worth Police Department policies regarding use of force and medical treatment.

The evidence indicates that City is entitled to summary judgment on this claim. The police officers' behavior on October 14, 2006, does not evidence a violation of a constitutional right for the reasons discussed supra Sections V.A. and V.B. See Fraire, 957 F.2d at 1277. While Ryan's assertion that he has been denied medical treatment implicates a constitutional right, see City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983), Ryan adduces no evidence to support this claim against City. His conclusory allegation is insufficient. See Topalian, 954 F.2d at 1131. Because there is no evidence to suggest that City violated Ryan's constitutional rights, much less that it condoned a pattern of violations, there is no material fact in dispute and City is entitled to judgment as a matter of law.[7] See Celeotex Corp., 477 U.S. at 323-25.

VI.

Order

For the reasons discussed above, the court concludes that the motions of (1) Southey and Myers, (2) De Los Santos,

---

[7]The only factual allegations to support any claim involving medical care in Ryan's affidavit are allegations involving unidentified personnel of Mansfield, Texas. The court need not evaluate these allegations against Mansfield, Texas, because it is not a party to this action and such allegations have no bearing on City's liability.

Phillips, and Genualdo, and (3) City for summary judgment should be granted.

Therefore,

The court ORDERS that defendants' motions for summary judgment be, and are hereby, granted, and that Ryan's claims and causes of action against defendants be, and are hereby, dismissed with prejudice.

SIGNED March 5, 2009.

_____
JOHN McBRYDE
United States District Judge